IN THE UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re | Case No. 11-03124 (Chapter 7) |
|---|---|
| BAY WEST KAILUA BAY, L.L.C., | RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW; EXHIBITS A - B |
| Debtor. | HEARING DATE DATE: November 14, 2012 TIME: 9:30 a.m. JUDGE: Honorable Robert J. Faris |

## RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Trustee Elizabeth A. Kane's Motion for Approval of Settlement and Determination of Good Faith came on for hearing on November 14, 2012, at 9:30 a.m. before the Honorable Robert J. Faris. Appearances were as noted on the record.

No objections to the Motion were filed before or during the hearing. The Court, having reviewed the Motion and having considered the absence of objections and the memoranda, declarations, exhibits, arguments of counsel, and records and files herein, and good cause appearing therefor, granted the Motion. The Court hereby issues its recommended findings of fact and conclusions of law as follows.

## FINDINGS OF FACT

<u>BACKGROUND</u>

1. On October 31, 2011, Debtor Bay West Kailua Bay, L.L.C. ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, in the United States Bankruptcy Court for the Eastern District of Virginia.

2. On December 2, 2011, the case was transferred to the United States Bankruptcy Court for the District of Hawaii.

3. The Trustee's interim report for the period ended March 31, 2012, listed among Debtor's assets a legal malpractice claim against Chun, Kerr, Dodd, Beaman & Wong ("CKDBW") with a stated value of approximately $2.74 million.

4. The Debtor filed its bankruptcy petition before initiating litigation or arbitration to resolve its legal malpractice claim.

5. The legal malpractice claim arose out of the sale of certain ownership units in the Diamond Hawaii Resort & Spa ("Diamond Resort") by Diamond Resort Hawaii Corporation, Diamond Resort Management, Inc., and Janic Corporation (collectively, the "Sellers") to Black Diamond Hospitality Investments, LLC ("Black Diamond").

6. In June 2008, Black Diamond assigned to Debtor the right to acquire 123 of the ownership units for approximately $3.7 million.

2

7. Of the $3.7 million purchase price sum, Debtor paid approximately $1.6 million and executed a note (the "Note") for the remaining $2.1 million.

8. In November 2009, Debtor assigned its interest in the 123 ownership interests back to Black Diamond and delegated to Black Diamond its payment obligations under the Note.

9. Although the Sellers consented to the assignment and delegation, they did not release Debtor from its payment obligations under the Note.

10. Debtor defaulted on its payment obligations under the Note and Sellers obtained a judgment against Debtor for the principal amount of the Note plus interest and attorneys' fees ("Note Litigation").

11. On or about March 2, 2011, Debtor, through its principals, Jerry Lynch and Jonathan McManus ("Lynch and McManus"), provided formal notice of Debtor's intention to assert a claim for legal malpractice against CKDBW related to the judgment entered against Debtor.

12. In evaluating the estate's potential claim, the Trustee reviewed files obtained from Turbin Chu, Attorneys at Law, the Honolulu law firm retained by Debtor, Lynch, and McManus before the filing of this Chapter 7 case to evaluate and pursue a legal malpractice claim against CKDBW.

13. The files revealed to the Trustee what the Debtor's claims were. The Debtor claimed, in part, that CKDBW represented Debtor as well as Black

3

Diamond in the transactions related to the Diamond Resort, that CKDBW did so without advising Debtor of the risks of having CKDBW represent Debtor's and Black Diamond's conflicting interests, that CKDBW served Black Diamond's interests at the expense of Debtor's, that CKDBW negligently proceeded with the transactions without obtaining and documenting an adequate indemnity agreement or Sellers' release of Debtor from liability under the Note, and that CKDBW disclosed Debtor's confidential information to Sellers, prompting Sellers to refuse to release Debtor from liability under the Note as Debtors intended when they agreed to participate in the transactions.

14.     Debtor also claimed that, as a direct result of CKDBW's negligence, Debtor incurred hundreds of thousands of dollars in attorneys' fees and Sellers obtained a judgment against Debtor for more than $2.5 million.

15.     The Turbin Chu files also indicated that extensive work had been done in gathering relevant documents, meeting with the principals of Debtor regarding factual issues, and legal research related to the claim against CKDBW. The Trustee had the benefit of this prior work in evaluating and assessing the estate's potential claims against CKDBW.

16.     In evaluating the estate's potential claims, the Trustee and her counsel also met with attorneys Trevor Brown and Mark Bennett from the Honolulu law firm representing CKDBW in the defense of the threatened legal malpractice claim

4

against CKDBW.    The Trustee also reviewed several documents provided by those lawyers.  The meeting and documents revealed that CKDBW would assert a number of defenses to any claim for legal malpractice.

17.    CKDBW would assert that Debtor was not its client and could not therefore bring any such claim, and that in any case, there was no malpractice. CKDBW would assert that Debtor was represented by other counsel, including Leland B. Evans, Esq., who ensured that the transaction was documented as intended by Debtor and as required to realize the benefits of a like-kind exchange pursuant to Section 1031 of the Internal Revenue Code (the "1031 Exchange"). CKDBW would also assert that, had CKDBW obtained a written release provision in the Note or some other document, the transaction would not have satisfied the requirements for a 1031 Exchange, that Debtor was aware of this, and that, therefore, the only way for Debtor to accomplish a 1031 Exchange while still obtaining a release would be for Debtor to conceal the true nature of the transaction from the Internal Revenue Service ("IRS").  CKDBW would assert that such concealment would constitute a fraud on the IRS and would bar Debtor from any recovery against CKDBW under the unclean hands and/or *in pari delicto* doctrines.  Additionally, CKDBW would argue that its duties did not extend to assisting Debtor in accomplishing a purported tax fraud by placing language in a separate document to avoid discovery by the IRS.

5

18.     CKDBW, through its attorneys, argued to the Trustee its view that pleadings and declarations filed by the Debtor in the Note Litigation provided strong evidence that estate's claim for malpractice would fail since the principals of Debtor knew, intended, and understood that the transaction at issue be documented just as it was.

19.     Sellers have denied that they agreed to release Debtor from its obligations under the Note following the assignment of the Note to BDHI.

20.     Moreover, the Trustee has communicated with counsel for Sellers, whose representatives worked on the transaction which gave rise to the Note and so have direct knowledge of some issues related to claims against CKDBW. Although Sellers are also the largest creditor of the estate, and stand most to benefit from any recovery against CKDBW, Sellers' counsel has advised the Trustee that Sellers support settling the claim against CKDBW as provided in the Settlement Agreement (defined below), even though the settlement is only a small fraction of the value of the claim stated by Debtor in its schedules.

21.     The Trustee found no engagement letter between Debtor and CKDBW in the documents that were available to her and CKDBW, through its attorneys, has told the Trustee that there is no such engagement letter.

22.     Based on the foregoing, the Court finds that the estate's claim will be vigorously disputed.

6

23. In light of CKDBW's likely position, the Court finds that it is uncertain whether and to what extent the Trustee could recover on the estate's claim.

24. The Trustee recognized that litigating the claim would be costly and time-consuming. Establishing the estate's claim and rebutting CKDBW's defenses would likely require substantial further research and discovery. Moreover, if the Trustee were to pursue the claim against CKDBW and lose, CKDBW would assert that the estate could be liable for CKDBW's attorneys' fees and costs.

25. The Trustee determined, in an exercise of her business judgment, that the uncertainty as to whether and to what extent she would prevail, coupled with the cost and delay inherent in litigation, militated in favor of accepting—after hard negotiation—CKDBW's offer to resolve Debtor's potential claim for $175,000. Although the Trustee conceivably might receive a larger sum if she were able to successfully prosecute costly and lengthy litigation, accepting prompt, certain payment of $175,000—even if less than the value of the estate's potential claim as scheduled by the Debtor—is appropriate.

THE SETTLEMENT AGREEMENT

26. The Trustee and CKDBW agreed to resolve the estate's legal malpractice claims on the terms set out in the Release and Settlement Agreement ("Settlement Agreement") attached hereto as Exhibit A.

7

27. Having compared, among other things, the terms of the compromise with the likely risks and rewards of litigation, the Trustee concluded that the Settlement Agreement is fair and equitable.

28. If any findings of fact stated herein shall be deemed to be conclusions of law, they are hereby incorporated by reference in the conclusions of law section below.

## CONCLUSIONS OF LAW

Based on the foregoing findings of fact, the Court concludes as a matter of law as follows:

29. The Trustee seeks approval of the Settlement Agreement under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and a determination of good faith under Section 663-15.5 of the Hawaii Revised Statutes.

30. Bankruptcy Rule 9019(a) provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

31. "[C]ompromises are favored in bankruptcy," *Sassalos v. John S. Marandas, P.C. (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993), and the

8

"bankruptcy court has great latitude in approving compromise agreements," *Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986).

32. In reviewing a settlement agreement, the Court "need not conduct an exhaustive investigation into the validity of the asserted claim." *United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982). The Court need only determine whether the settlement agreement is fair, reasonable, and adequate. *In re A&C Props.*, 784 F.2d at 1381.

33. In *A&C Properties,* the Ninth Circuit held that, "[i]n determining the fairness, reasonableness, and adequacy of a proposed compromise, a court must consider: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved and related expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.*

34. In considering these factors, the "trustee's judgment is to be accorded some deference." *In re Healthco Int'l, Inc.*, 136 F.3d 45, 50 (1st Cir. 1998) (internal quotation marks omitted).

35. Section 663-15.5 of the Hawaii Revised Statutes provides for approval of a settlement agreement under Hawaii law.

36. Section 663-15.5 provides:

9

**Release; joint tortfeasors; co-obligors; good faith settlement.** (a) A release, dismissal with or without prejudice, or a covenant not to sue or not to enforce a judgment that is given in good faith under subsection (b) to one or more joint tortfeasors, or to one or more co-obligors who are mutually subject to contribution rights, shall:

> (1) Not discharge any other joint tortfeasor or co-obligor not released from liability unless its terms so provide;

> (2) Reduce the claims against the other joint tortfeasor or coobligor not released in the amount stipulated by the release, dismissal, or covenant, or in the amount of the consideration paid for it, whichever is greater; and

> (3) Discharge the party to whom it is given from all liability for any contribution to any other joint tortfeasor or co-obligor.

(b) For purposes of subsection (a), any party shall petition the court for a hearing on the issue of good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, serving notice to all other known joint tortfeasors or co-obligors.

37. Section 663-15.5 expressly "appl[ies] to a release, dismissal, or covenant given before, as well as after, a lawsuit has been filed and does not require the existence of a lawsuit." Haw. Rev. Stat. § 663-15.5(g).

38. The Hawaii Supreme Court has interpreted the "good faith" requirement of Section 663-15.5 to require an examination of the "totality of the

10

circumstances," including "(1) the type of case and difficulty of proof at trial, e.g., rear-end motor vehicle collision, medical malpractice, product liability, etc.; (2) the realistic approximation of total damages that the plaintiff seeks; (3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial; (4) the predicted expense of litigation; (5) the relative degree of fault of the settling tortfeasors; (6) the amount of consideration paid to settle the claims; (7) the insurance policy limits and solvency of the joint tortfeasors; (8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and (9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose." *Troyer v. Adams*, 77 P.3d 83, 112 (Haw. 2003).

39.    Because the factors considered by the Ninth Circuit in *A&C Properties* include those considered by the Hawaii Supreme Court in *Troyer*, this Court considered the *A&C Properties* factors and additional *Troyer* factors below.

40.    *The probability of success in the litigation.* As noted above, based on the Court's review and analysis of the Motion, the memoranda, declarations, exhibits, arguments of counsel, and records and files, it appears to the Court that the probability of success in the litigation is uncertain in light of, among other things, CKDBW's assertions that:

11

(a)    No attorney-client relationship existed between Debtor (or Lynch and McManus) and CKDBW;

(b)    Release language was not intended to be part of any written or oral agreement; and

(c)    Even if there were an agreement releasing Debtor from liability under the Note, such a release would have been impermissible in the context of the 1031 Exchange that was Debtor's objective.

The Court recognizes that there appears to be substantial evidence that supports CKDBW's position.

41.    *The difficulties, if any, to be encountered in the matter of collection.* The Court does not know the "insurance policy limits" for CKDBW, *Troyer*, 77 P.3d at 112, but it notes that attempting to recover the policy limits would involve the "expense, inconvenience and delay" of litigation for the estate, *In re Healthco Int'l*, 136 F.3d at 50.

42.    *The complexity of the litigation involved and related expense, inconvenience and delay necessarily attending it.* Courts have recognized that litigation of legal malpractice claims involves the complexity of trying a "case within a case." *Armstrong v. Rushton (In re Armstrong)*, Nos. UT-03-059, 00-26592, 2004 WL 1040693, at *2 (10th Cir. B.A.P. May 6, 2004); *In re Wolff*, No. 05-B-4815, 2010 WL 27335, at *10 (Bankr. N.D. Ill. Jan 5, 2010). Here, the

12

Trustee would need to establish in a portion of her case against CKDBW that, but for CKDBW's negligence, the Debtor would have been able to persuade the Sellers to release the obligations of the Debtor. Trial of the estate's malpractice claim thus would be a "costly and complex endeavor," *In re Armstrong*, 2004 WL 1040693, at *2, potentially requiring substantial discovery and the retention of expert witnesses.

43.     *The paramount interest of the creditors and a proper deference to their reasonable views in the premises.* Counsel for Debtor's largest creditors (the Sellers described above), has confirmed that Sellers support the proposed Settlement Agreement. Under the Settlement Agreement, CKDBW will pay, upon entry of proposed findings of fact and conclusions of law, the sum of $175,000. *See* Ex. A (Settlement Agreement) at Section 1. These funds will provide "definitive, concrete and immediate benefits." *In re Healthco Int'l*, 136 F.3d at 50.

44.     *Additional Troyer factors.* There was no preexisting relationship between the Trustee and CKDBW that would influence the Trustee's decision to settle, and settlement was reached only after extensive negotiations.

45.     As described above, the factors considered under *A&C Properties* and the consistent circumstances considered under *Troyer* weigh in favor of approving the Settlement Agreement and in determining that the Settlement Agreement was reached in good faith.

U.S. Bankruptcy Court - Hawaii   #11-03124   Dkt # 117   Filed 11/15/12   Page 13 of 52

46. The Settlement Agreement entered into between the Trustee and CKDBW was made in good-faith pursuant to Haw. Rev. Stat. § 663-15.5.

47. The settlement of the estate's claims on the terms and conditions of the attached Settlement Agreement (Ex. A) is reasonable and prudent in light of the costs and risks of litigating those claims, and is within the range of the reasonable business judgment of the Trustee.

48. As required under Bankruptcy Rule 9019(a), the Trustee has provided notice of this motion to creditors, Debtor, and any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002. The Trustee has also provided proper notice to the persons on Exhibit B attached hereto who may have advised Debtor with respect to its investment in the Diamond Resort or be otherwise related to the claims settled and therefore might be considered joint tortfeasors under Section 663-15.5 of the Hawaii Revised Statutes.

49. If any of the conclusions of law stated herein shall be deemed to be findings of fact, they are hereby incorporated by reference in the findings of fact section above.

NOV 1 5 2012

_____
United States Bankruptcy Judge

14

# RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement ("**Agreement**") is entered by and between CHUN KERR DODD BEAMAN & WONG, a Hawaii limited liability law partnership ("**CKDBW**") and ELIZABETH A. KANE, Chapter 7 Trustee ("**Trustee**") for BAY WEST KAILUA BAY, L.L.C. ("**Debtor**") (collectively "**Parties**" and individually "**Party**").

## RECITALS

A.  On October 31, 2011, the Debtor filed a voluntary petition under Chapter 7 of the United States Code, 11 U.S.C. §§ 101 et seq., ("**Bankruptcy Code**") thereby commencing the Chapter 7 bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Virginia.

B.  On December 2, 2011, the United States Bankruptcy Court for the Eastern District of Virginia entered an order granting a motion to transfer the case to the United States Bankruptcy Court for the District of Hawaii (the "**Bankruptcy Court**"). The Chapter 7 bankruptcy proceeding is known as *In re Bay West Kailua Bay, L.L.C.*, Case No. 11-03124 (Chapter 7) ("**Bankruptcy Action**").

C.  The Trustee's interim report for period ending on March 3, 2012 identified a legal malpractice claim with a stated value of $2,741,726.42 against CKDBW as one of Debtor's assets.

D.  This alleged legal malpractice claim, that is part of the subject of this settlement, arises from CKDBW's role in advising its former client, Black Diamond Hospitality Investments, LLC ("**BDHI**"), in purchasing approximately 1,000 tenant-in-common units ("**TIC Units**") at the Diamond Hawaii Resort & Spa ("**Diamond Resort**"), and related matters ("**the Transaction**").

E.  In June 2008, BDHI assigned Debtor the right to acquire 123 of the TIC Units. Debtor borrowed approximately $2.1 million from the seller of the TIC Units ("**Seller**") to purchase the 123 TIC Units and executed a promissory note in favor of the Seller ("**Note**").

F.  In November 2009, Debtor transferred its 123 TIC Units to BDHI, but Debtor remained liable for the payment obligations under the Note. Debtor's bankruptcy schedules show that Debtor received a 13.5% membership interest in BDHI.

G.  Debtor defaulted on its payment obligations under the Note and the Seller obtained a judgment against Debtor. On or about March 2, 2011, Debtor (through its principals, Jerry Lynch and Jon McManus) accused CKDBW of legal malpractice, including claims related to the Transaction and/or the Diamond Resort. CKDBW denies any such claim. Debtor filed the instant Bankruptcy Action before the purported legal malpractice claim against CKDBW could be resolved.

679371v5

EXHIBIT A
U.S. Bankruptcy Court - Hawaii  #11-03124  Dkt # 117  Filed 11/15/12  Page 15 of 52

NOW THEREFORE, in consideration of the promises and agreements contained herein and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.     **Payment.** CKDBW shall cause to be paid the sum of $175,000.00 to the Trustee ("**Payment**"). Such Payment shall be placed in escrow fifteen (15) days after the Bankruptcy Court issues its recommended findings of fact and conclusions of law described in paragraph 3 below. Such Payment shall be released to the Trustee when the order described in paragraph 3 below is final and non-appealable. If such a final non-appealable order is not obtained, Payment shall be returned to CKDBW.

2.     **CKDBW's Unpaid Fees.** Although the Parties agree that there has been no admission of liability of any kind whatsoever, the Parties acknowledge that this Agreement represents a compromise by both Parties. Accordingly, in consideration of CKDBW's Payment, the Trustee acknowledges and agrees that CKDBW is owed at least $175,000.00 for legal fees related to the Transaction and/or the Diamond Resort. The Trustee further agrees that CKDBW has an unsecured claim in the Debtor's bankruptcy estate in the amount of $175,000.00 that shall survive the execution of this Agreement.

3.     **Court Approval.** The Trustee within five (5) business days after full execution of this Agreement will file a motion seeking approval of this Agreement as a proper exercise of the Trustee's powers and as a "good faith settlement" within the meaning of Hawai'i Revised Statutes ("**HRS**") Section 663-15.5. Such motion shall request recommended findings of fact and conclusions of law from the Bankruptcy Court (in substantially the form attached as Exhibit 2) and, ultimately, an order from the United States District Court District of Hawaii ("**Court**") approving this Agreement and that it is a "good faith settlement." The Parties agree to cooperate (a) in providing adequate and proper notice to all parties which shall be affected by such order, and (b) in obtaining the Court's approval of this Agreement.

4.     **Proof of Claim Deadline and Creditor Consent.** Attached hereto as Exhibit 1, is a form of Proof of Claim which shall be deemed timely filed and allowed upon approval of this Agreement by the court. The Trustee represents that she has obtained the support and consent of Diamond Resort Hawaii, Corp., Diamond Resort Management, Inc. and Janic, the largest creditors of Debtor, for the terms of this Agreement.

5.     **Attorneys' Fees, Costs, and Expenses.** Except as otherwise provided in this Agreement, the Parties shall bear their own respective attorneys' fees, costs, expenses, commissions and costs of settlement. However, in the event there is an action, suit or proceeding to enforce this Agreement or any of its terms, or otherwise relating to this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs.

6.     **Release of Liabilities.** The Trustee and Debtor hereby forever, completely and fully release and acquit CKDBW, its past and current affiliates, partners, members, managers, subsidiaries, parents, agents, principals, directors, officers, shareholders, investors, owners, employees, attorneys, representatives, administrators, executors, heirs, successors, predecessors, assigns, and insurers (hereafter "**CKDBW Releasees**"), of and from any and all claims,

679371v5

U.S. Bankruptcy Court - Hawaii  #11-03124  Dkt # 117  Filed 11/15/12  Page 16 of 52

damages, liabilities, actions, or causes of action, of any kind whatsoever, arising at any time through the date of this Agreement, whether legal or equitable, contingent or non-contingent, and known or unknown, specifically including, but not limited to, any legal malpractice claims, including, but not limited to, those that could have been made in the Bankruptcy Action (the "**Release**"). The Trustee acknowledges that this is a broad release of all claims, and agrees to it with full knowledge of its breadth. The Trustee fully recognizes that there may be facts of which she is unaware that could be relevant to her decision to provide the releases in this paragraph and to enter into this Agreement. She understands after this Agreement is executed, she may learn of facts or claims of which she was unaware at the time she executed this Agreement. Fully aware of that possibility, she nonetheless enters into this Agreement which releases the claims in this paragraph, with the full knowledge and understanding that no matter what additional facts she may learn after execution of this Agreement, this Agreement will nonetheless be fully binding and enforceable, subject, however, to a final non-appealable order approving this settlement.

7.    **Cooperation in Provision of Information.**  CKDBW will provide, at its cost, information and documents reasonably requested by the Trustee, subject to any applicable privileges.

8.    **Future Release of CKDBW.**  CKDBW believes that neither Jerry Lynch, Jon McManus, nor any entities controlled by them have any meritorious legal malpractice claims against CKDBW. Both CKDBW and the Trustee recognize that Lynch, McManus, or the companies controlled by them could try to assert a claim, however meritless such an assertion might be, and thus the consideration paid by CKDBW herein might not be bringing them complete and final resolution of this matter. In consideration of this fact and the amount CKDBW is paying in consideration herein, the Trustee promises, warrants, and agrees, that should she enter into a consensual or negotiated resolution or resolutions of any of the estate's claims against Jerry Lynch, Jon McManus, and/or any entity controlled by or related to Jerry Lynch or Jon McManus (collectively "**Lynch or McManus Related Entities**"), the Trustee agrees to use her best efforts to obtain a negotiated resolution that includes a full and complete release of any and all legal malpractice or related claims against CKDBW Releasees by all Lynch or McManus Related Entities.

9.    **Waiver.**  Each Party waives and relinquishes any right to assert hereafter that any claim, demand, obligation and/or cause of action that has, through ignorance, oversight, error or otherwise, been omitted from this Agreement.  Each Party makes this waiver with full knowledge of its rights and after consulting with legal counsel.

10.    **Warranty.**  Each Party represents and warrants that it is the owner of all right, title and interest in and to the claims it is releasing herein and that it has not assigned or transferred, or purported to assign or transfer, any of the claims released and/or any portion(s) thereof.

11.    **Joint Tortfeasor Release.**  It is covenanted and agreed that the Release herein shall be construed as a Joint Tortfeasor Release pursuant to the provisions of Sections 663-11 through 663-17, HRS, as amended, and that the Release shall; i) not discharge any other party not released from liability unless specifically set forth herein, ii) reduce Trustee's and Debtor's recovery against all other joint tortfeasors or co-obligors by the amount of the consideration paid

U.S. Bankruptcy Court - Hawaii  #11-03124  Dkt # 117  Filed 11/15/12  Page 17 of 52

for the release--$175,000 (there being no greater amount stipulated herein), and iii) discharge CKDBW from all liability for any contribution or indemnity obligation to any other joint tortfeasor or co-obligor.

12.    **Good Faith Settlement.** The Parties agree that this Agreement and the settlement hereunder are a "good faith settlement" within the meaning of HRS Section 663-15.5 and shall (as provided in paragraph 3 above) appropriately seek a determination of good faith by a court as set forth in HRS § 663-15. CKBDW's agreements herein are contingent on obtaining that approval, and if that approval is not obtained, CKDBW shall have the discretionary right to withdraw from this Agreement, and if it does so, all Parties shall be returned to the *status quo ante*. Trustee's agreements herein are contingent on obtaining court approval of Trustee entering into this Agreement, and if that approval is not obtained, Trustee shall withdraw from this Agreement, and if she does so, all Parties shall be returned to the *status quo ante*.

13.    **No Admission of Liability.** The Parties each acknowledge and agree that there has been no admission of liability, misconduct or fault of any kind whatsoever, and that this Agreement, and all action to be taken in compliance with this Agreement, shall be construed and represented strictly and solely as a compromise and settlement between the Parties for the purpose of avoiding future controversy, litigation and expense. CKDBW has not admitted or agreed that Debtor was at any time its client.

14.    **Complete Agreement.** This Agreement represents the complete and fully integrated agreement of the Parties and supersedes all prior or contemporaneous negotiations, discussion and agreements relating to the subject matter of this Agreement. There are no terms to the Parties' agreement that are not expressed in writing in this Agreement. None of the Parties has relied on any representations, statements, or opinions of the other Party or its representatives in entering into and executing this Agreement. The Parties recognize that there may be claims unknown to them that are being released and discharged under this Agreement, and each knowingly and voluntarily assumes such risk and waives the benefit of any such protection that may be granted by statute, common law or otherwise that would or could limit the release and discharge hereunder of unknown claims.

15.    **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties, each person or entity released herein, and each of their successors and assigns.

16.    **Governing Law.** This Agreement shall be governed by the laws of the State of Hawaii and the Bankruptcy Code, if applicable. Any proceeding brought to enforce this Agreement shall be brought in the United States Bankruptcy Court, District of Hawaii.

17.    **Cooperation.** The Parties agree to execute any documents and shall promptly provide such other further actions, assurances, court filings (including appellate briefs), information and signatures as reasonably may be requested to carry out the provisions and intent of this Agreement.

679371v5

U.S. Bankruptcy Court - Hawaii  #11-03124  Dkt # 117  Filed 11/15/12  Page 18 of 52

18.  **Interpretation and Enforcement.**  This Agreement shall be interpreted to give effect to the purpose and intention of the Parties, as stated herein.  This Agreement has been negotiated at arm's length among sophisticated parties represented by experienced counsel. Thus, the rule of "interpretation against the draftsman" shall not apply if any dispute arises over the interpretation of the terms of this Agreement.

19.  **Modification.**  This Agreement shall not be altered, amended or modified except by a writing executed by each of the Parties or their respective successors in interest.

20.  **Captions or Headings.**  In this Agreement, the captions or headings of paragraphs and subparagraphs are inserted for convenience, reference and identification only, and shall not control, define, limit or affect any provision of this Agreement.

21.  **Counterpart/Facsimile Execution.**  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original; however, all such counterparts shall constitute but one and the same instrument, notwithstanding the fact that all Parties are not signatories to an original or the same counterpart.  A facsimile signature to this Agreement shall be deemed to be and may be relied upon as an original for all purposes. Likewise, facsimile transmission by the executing party of an executed counterpart of this Agreement shall be deemed delivery of an original, executed counterpart.

IN WITNESS WHEREOF, the Parties have duly executed this Agreement on the dates indicated below.


DATED:  September 11 , 2012            CHUN KERR DODD BEAMAN & WONG,
                                       a Hawaii limited liability law partnership

                                       By: _____
                                       Name:  ANDREW R. BUNN
                                       Its:  PARTNER


DATED:  September 11 , 2012            _____
                                       ELIZABETH A. KANE, Chapter 7 Trustee for
                                       BAY WEST KAILUA BAY, L.L.C.

679371v5

Exhibit 1
Proof of Claim

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT | District of Hawaii | | PROOF OF CLAIM |
|---|---|---|---|

| Name of Debtor: <br> BAY WEST KAILUA BAY, L.L.C. | Case Number: <br> 11-03124 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
CHUN KERR DODD BEAMAN & WONG, LLLP

| | COURT USE ONLY |
|---|---|
| Name and address where notices should be sent: <br> 745 FORT STREET, 9TH FLOOR, HONOLULU, HI 96813-3815 <br><br> Telephone number: 528-8200    email: abunn@ckdbw.com | ☐ Check this box if this claim amends a previously filed claim. <br><br> Court Claim Number:_____ <br> (*If known*) <br><br> Filed on:___ ____ ____ |
| Name and address where payment should be sent (if different from above): <br><br><br> Telephone number:    email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars |

1. **Amount of Claim as of Date Case Filed:**    $ _____ 175,000.00 _____

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** ___SETTLEMENT AGREEMENT WITH TRUSTEE___
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: <br><br> (See instruction #3a) | 3b. Uniform Claim Identifier (optional): <br><br> (See instruction #3b) |
|---|---|---|

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information

Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

Value of Property: $_____

**Annual Interest Rate**_____ % ☐ Fixed or ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

   $_____

Basis for perfection: _____

**Amount of Secured Claim:**   $_____

**Amount Unsecured:**   $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| ☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4) | ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5) | |
|---|---|---|---|
| ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7) | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8) | ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__) | **Amount entitled to priority:** <br> $_____ 0 00 |

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

U.S. Bankruptcy Court - Hawaii   #11-03124   Dkt # 117   Filed 11/15/12   Page 20 of 52

2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements   If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached  *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor   ☑ I am the creditor's authorized agent   ☐ I am the trustee, or the debtor,   ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)   or their authorized agent   (See Bankruptcy Rule 3005 )
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   **JAMES N. DUCA**
Title:   **ATTORNEY AT LAW**
Company:   **LYONS, BRANDT, COOK & HIRAMATSU**   /s/ James N. Duca                            07/06/2012
Address and telephone number (if different from notice address above):   (Signature)                               (Date)
841 BISHOP STREET, SUITE 1800
HONOLULU, HI 96813

Telephone number: 524-7030        email:  JDUCA@LBCHLAW.COM
*Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U.S.C. §§ 152 and 3571.*

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number  If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case  A separate space is provided for the payment address if it differs from the notice address  The creditor has a continuing obligation to keep the court informed of its current address  See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing  Follow the instructions concerning whether to complete items 4 and 5  Check the box if interest or other charges are included in the claim

**2. Basis for Claim:**
State the type of debt or how it was incurred  Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card  If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information  You may be required to provide additional disclosure if an interested party objects to the claim

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here  A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases

**4. Secured Claim:**
Check whether the claim is fully or partially secured  Skip this section if the claim is entirely unsecured  (See Definitions.)  If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority.  (See Definitions.)  A claim may be partly priority and partly non-priority  For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt  You must also attach copies of documents that evidence perfection of any security interest  You may also attach a summary in addition to the documents themselves  FRBP 3001(c) and (d)  If the claim is based on delivering health care goods or services, limit disclosure confidential health care information  Do not send original documents, as attachments may be destroyed after scanning

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it  FRBP 9011  If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature  If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief.  Your signature is also a certification that the claim meets the requirements of FRBP 9011(b)  Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration  Print the name and title, if any, of the creditor or other person authorized to file this claim  State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices  If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent  If the authorized agent is a servicer, identify the corporate servicer as the company  Criminal penalties apply for making a false statement on a proof of claim

_____**DEFINITIONS**_____                                    _____**INFORMATION**_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system

(www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

# EXHIBIT 2

## FORM OF RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### IN THE UNITED STATES BANKRUPTCY COURT

### DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>**BAY WEST KAILUA BAY, L.L.C.,**<br><br>Debtor. | Case No. 11-03124<br>(Chapter 7)<br><br>**RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW; EXHIBITS A - B**<br><br>Hearing Date: _____<br>Time: _____<br>Judge: Honorable Robert J. Faris |

### RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Elizabeth A. Kane, Chapter 7 Trustee for Bay West Kailua Bay, L.L.C's

Motion for Approval of Settlement and Determination of Good Faith filed _____

_____, came on for hearing on _____ at __ __.m before the Honorable __

_____ _____.

1

U.S. Bankruptcy Court - Hawaii #11-03124 Dkt # 117 Filed 11/15/12 Page 23 of 52

Having reviewed the Motion and having considered the memoranda, declarations, exhibits, arguments of counsel, and records and files herein, and good cause appearing therefore, it is hereby ordered that the Motion is granted. The Court hereby issues its findings of fact and conclusions of law as follows.

## FINDINGS OF FACT

### BACKGROUND

1.    On October 31, 2011, Debtor Bay West Kailua Bay, L.L.C. ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, in the United States Bankruptcy Court for the Eastern District of Virginia.

2.    On December 2, 2011, the case was transferred to the United States Bankruptcy Court for the District of Hawaii.

3.    The Trustee's interim report for the period ended March 31, 2012, listed among Debtor's assets a legal malpractice claim against Chun, Kerr, Dodd, Beaman & Wong ("CKDBW") with a stated value of approximately $2.74 million.

4.    The Debtor filed its bankruptcy petition before initiating litigation or arbitration to resolve its legal malpractice claim.

5.    The legal malpractice claim arose out of the sale of certain ownership units in the Diamond Hawaii Resort & Spa ("Diamond Resort") by Diamond

2

695844 v. 2

Exhibit 2
Page 2 of 23

Resort Hawaii Corporation, Diamond Resort Management, Inc., and Janic Corporation (collectively, the "Sellers") to Black Diamond Hospitality Investments, LLC ("Black Diamond").

6.    In June 2008, Black Diamond assigned to Debtor the right to acquire 123 of the ownership units for approximately $3.7 million.

7.    Of the $3.7 million purchase price sum, Debtor paid approximately $1.6 million and executed a note (the "Note") for the remaining $2.1 million.

8.    In November 2009, Debtor assigned its interest in the 123 ownership interests back to Black Diamond and delegated to Black Diamond its payment obligations under the Note.

9.    Although the Sellers consented to the assignment and delegation, they did not release Debtor from its payment obligations under the Note.

10.   Debtor defaulted on its payment obligations under the Note and Sellers obtained a judgment against Debtor for the principal amount of the Note plus interest and attorneys' fees ("Note Litigation").

11.   On or about March 2, 2011, Debtor, through its principals, Jerry Lynch and Jonathan McManus ("Lynch and McManus"), provided formal notice of Debtor's intention to assert a claim for legal malpractice against CKDBW related to the judgment entered against Debtor.

12.     In evaluating the estate's potential claim, the Trustee reviewed files obtained from Turbin Chu, Attorneys at Law, the Honolulu law firm retained by Debtor, Lynch, and McManus before the filing of this Chapter 7 case to evaluate and pursue a legal malpractice claim against CKDBW.

13.     The files revealed to the Trustee what the Debtor's claims were. The Debtor claimed, in part, that CKDBW represented Debtor as well as Black Diamond in the transactions related to the Diamond Resort, that CKDBW did so without advising Debtor of the risks of having CKDBW represent Debtor's and Black Diamond's conflicting interests, that CKDBW served Black Diamond's interests at the expense of Debtor's, that CKDBW negligently proceeded with the transactions without obtaining and documenting an adequate indemnity agreement or Sellers' release of Debtor from liability under the Note, and that CKDBW disclosed Debtor's confidential information to Sellers, prompting Sellers to refuse to release Debtor from liability under the Note as Debtors intended when they agreed to participate in the transactions.

14.     Debtor also claimed that, as a direct result of CKDBW's negligence, Debtor incurred hundreds of thousands of dollars in attorneys' fees and Sellers obtained a judgment against Debtor for more than $2.5 million.

15.     The Turbin Chu files also indicated that extensive work had been done in gathering relevant documents, meeting with the principals of Debtor

U.S. Bankruptcy Court - Hawaii  #11-03124  Dkt # 117  Filed 11/15/12  Page 26 of 52

regarding factual issues, and legal research related to the claim against CKDBW. The Trustee had the benefit of this prior work in evaluating and assessing the estate's potential claims against CKDBW.

16.    In evaluating the estate's potential claims, the Trustee and her counsel also met with attorneys Trevor Brown and Mark Bennett from the Honolulu law firm representing CKDBW in the defense of the threatened legal malpractice claim against CKDBW.    The Trustee also reviewed several documents provided by those lawyers.    The meeting and documents revealed that CKDBW would assert a number of defenses to any claim for legal malpractice.

17.    CKDBW would assert that Debtor was not its client and could not therefore bring any such claim, and that in any case, there was no malpractice. CKDBW would assert that Debtor was represented by other counsel, including Leland B. Evans, Esq., who ensured that the transaction was documented as intended by Debtor and as required to realize the benefits of a like-kind exchange pursuant to Section 1031 of the Internal Revenue Code (the "1031 Exchange"). CKDBW would also assert that, had CKDBW obtained a written release provision in the Note or some other document, the transaction would not have satisfied the requirements for a 1031 Exchange, that Debtor was aware of this, and that, therefore, the only way for Debtor to accomplish a 1031 Exchange while still obtaining a release would be for Debtor to conceal the true nature of the

transaction from the Internal Revenue Service ("IRS"). CKDBW would assert that such concealment would constitute a fraud on the IRS and would bar Debtor from any recovery against CKDBW under the unclean hands and/or *in pari delicto* doctrines. Additionally, CKDBW would argue that its duties did not extend to assisting Debtor in accomplishing a purported tax fraud by placing language in a separate document to avoid discovery by the IRS.

18.　CKDBW, through its attorneys, argued to the Trustee its view that pleadings and declarations filed by the Debtor in the Note Litigation provided strong evidence that estate's claim for malpractice would fail since the principals of Debtor knew, intended, and understood that the transaction at issue be documented just as it was.

19.　Sellers have denied that they agreed to release Debtor from its obligations under the Note following the assignment of the Note to BDHI.

20.　Moreover, the Trustee has communicated with counsel for Sellers, whose representatives worked on the transaction which gave rise to the Note and so have direct knowledge of some issues related to claims against CKDBW. Although Sellers are also the largest creditor of the estate, and stand most to benefit from any recovery against CKDBW, Sellers' counsel has advised the Trustee that Sellers support settling the claim against CKDBW as provided in the

U.S. Bankruptcy Court - Hawaii　#11-03124　Dkt # 117　Filed 11/15/12　Page 28 of 52

Settlement Agreement (defined below), even though the settlement is only a small fraction of the value of the claim stated by Debtor in its schedules.

21.     The Trustee found no engagement letter between Debtor and CKDBW in the documents that were available to her and CKDBW, through its attorneys, has told the Trustee that there is no such engagement letter.

22.     Based on the foregoing, the Court finds that the estate's claim will be vigorously disputed.

23.     In light of CKDBW's likely position, the Court finds that it is uncertain whether and to what extent the Trustee could recover on the estate's claim.

24.     The Trustee recognized that litigating the claim would be costly and time-consuming. Establishing the estate's claim and rebutting CKDBW's defenses would likely require substantial further research and discovery. Moreover, if the Trustee were to pursue the claim against CKDBW and lose, CKDBW would assert that the estate could be liable for CKDBW's attorneys' fees and costs.

25.     The Trustee determined, in an exercise of her business judgment, that the uncertainty as to whether and to what extent she would prevail, coupled with the cost and delay inherent in litigation, militated in favor of accepting—after hard negotiation—CKDBW's offer to resolve Debtor's potential claim for $175,000. Although the Trustee conceivably might receive a larger sum if she were able to

7

successfully prosecute costly and lengthy litigation, accepting prompt, certain payment of $175,000—even if less than the value of the estate's potential claim as scheduled by the Debtor—is appropriate.

## THE SETTLEMENT AGREEMENT

26.     The Trustee and CKDBW agreed to resolve the estate's legal malpractice claims on the terms set out in the Release and Settlement Agreement ("Settlement Agreement") attached hereto as Exhibit A.

27.     Having compared, among other things, the terms of the compromise with the likely risks and rewards of litigation, the Trustee concluded that the Settlement Agreement is fair and equitable.

28.     If any findings of fact stated herein shall be deemed to be conclusions of law, they are hereby incorporated by reference in the conclusions of law section below.

## CONCLUSIONS OF LAW

Based on the foregoing findings of fact, the Court concludes as a matter of law as follows:

29.     The Trustee seeks approval of the Settlement Agreement under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and a determination of good faith under Section 663-15.5 of the Hawaii Revised Statutes.

30.     Bankruptcy Rule 9019(a) provides:

> On motion by the trustee and after notice and a hearing,
> the court may approve a compromise or settlement.
> Notice shall be given to creditors, the United States
> trustee, the debtor, and indenture trustees as provided in
> Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

31.     "[C]ompromises are favored in bankruptcy," *Sassalos v. John S. Marandas, P.C. (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993), and the "bankruptcy court has great latitude in approving compromise agreements," *Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986).

32.     In reviewing a settlement agreement, the Court "need not conduct an exhaustive investigation into the validity of the asserted claim." *United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982). The Court need only determine whether the settlement agreement is fair, reasonable, and adequate. *In re A&C Props.*, 784 F.2d at 1381.

33.     In *A&C Properties,* the Ninth Circuit held that, "[i]n determining the fairness, reasonableness, and adequacy of a proposed compromise, a court must consider: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved and related expense, inconvenience and delay necessarily attending it;

U.S. Bankruptcy Court - Hawaii   #11-03124   Dkt # 117   Filed 11/15/12   Page 31 of 52

and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.*

34.    In considering these factors, the "trustee's judgment is to be accorded some deference." *In re Healthco Int'l, Inc.*, 136 F.3d 45, 50 (1st Cir. 1998) (internal quotation marks omitted).

35.    Section 663-15.5 of the Hawaii Revised Statutes provides for approval of a settlement agreement under Hawaii law.

36.    Section 663-15.5 provides:

> **Release; joint tortfeasors; co-obligors; good faith settlement.** (a) A release, dismissal with or without prejudice, or a covenant not to sue or not to enforce a judgment that is given in good faith under subsection (b) to one or more joint tortfeasors, or to one or more co-obligors who are mutually subject to contribution rights, shall:
>
> > (1)    Not discharge any other joint tortfeasor or co-obligor not released from liability unless its terms so provide;
> >
> > (2)    Reduce the claims against the other joint tortfeasor or coobligor not released in the amount stipulated by the release, dismissal, or covenant, or in the amount of the consideration paid for it, whichever is greater; and
> >
> > (3)    Discharge the party to whom it is given from all liability for any contribution to any other joint tortfeasor or co-obligor.

695844 v. 2

(b) For purposes of subsection (a), any party shall petition the court for a hearing on the issue of good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, serving notice to all other known joint tortfeasors or co-obligors.

37.    Section 663-15.5 expressly "appl[ies] to a release, dismissal, or covenant given before, as well as after, a lawsuit has been filed and does not require the existence of a lawsuit." Haw. Rev. Stat. § 663-15.5(g).

38.    The Hawaii Supreme Court has interpreted the "good faith" requirement of Section 663-15.5 to require an examination of the "totality of the circumstances," including "(1) the type of case and difficulty of proof at trial, e.g., rear-end motor vehicle collision, medical malpractice, product liability, etc.; (2) the realistic approximation of total damages that the plaintiff seeks; (3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial; (4) the predicted expense of litigation; (5) the relative degree of fault of the settling tortfeasors; (6) the amount of consideration paid to settle the claims; (7) the insurance policy limits and solvency of the joint tortfeasors; (8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and (9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose." *Troyer v. Adams*, 77 P.3d 83, 112 (Haw. 2003).

39. Because the factors considered by the Ninth Circuit in *A&C Properties* include those considered by the Hawaii Supreme Court in *Troyer*, this Court considered the *A&C Properties* factors and additional *Troyer* factors below.

40. *The probability of success in the litigation.* As noted above, based on the Court's review and analysis of the Motion, the memoranda, declarations, exhibits, arguments of counsel, and records and files, it appears to the Court that the probability of success in the litigation is uncertain in light of, among other things, CKDBW's assertions that:

    (a)    No attorney-client relationship existed between Debtor (or Lynch and McManus) and CKDBW;

    (b)    Release language was not intended to be part of any written or oral agreement; and

    (c)    Even if there were an agreement releasing Debtor from liability under the Note, such a release would have been impermissible in the context of the 1031 Exchange that was Debtor's objective.

The Court recognizes that there appears to be substantial evidence that supports CKDBW's position.

41. *The difficulties, if any, to be encountered in the matter of collection.* The Court does not know the "insurance policy limits" for CKDBW, *Troyer,*

12

77 P.3d at 112, but it notes that attempting to recover the policy limits would involve the "expense, inconvenience and delay" of litigation for the estate, *In re Healthco Int'l*, 136 F.3d at 50.

42. *The complexity of the litigation involved and related expense, inconvenience and delay necessarily attending it.* Courts have recognized that litigation of legal malpractice claims involves the complexity of trying a "case within a case." *Armstrong v. Rushton (In re Armstrong)*, Nos. UT-03-059, 00-26592, 2004 WL 1040693, at *2 (10th Cir. B.A.P. May 6, 2004); *In re Wolff*, No. 05-B-4815, 2010 WL 27335, at *10 (Bankr. N.D. Ill. Jan 5, 2010). Here, the Trustee would need to establish in a portion of her case against CKDBW that, but for CKDBW's negligence, the Debtor would have been able to persuade the Sellers to release the obligations of the Debtor. Trial of the estate's malpractice claim thus would be a "costly and complex endeavor," *In re Armstrong*, 2004 WL 1040693, at *2, potentially requiring substantial discovery and the retention of expert witnesses.

43. *The paramount interest of the creditors and a proper deference to their reasonable views in the premises.* Counsel for Debtor's largest creditors (the Sellers described above), has confirmed that Sellers support the proposed Settlement Agreement. Under the Settlement Agreement, CKDBW will pay, upon entry of proposed findings of fact and conclusions of law, the sum of $175,000.

*See* Ex. A (Settlement Agreement) at Section 1. These funds will provide "definitive, concrete and immediate benefits." *In re Healthco Int'l*, 136 F.3d at 50.

44.   *Additional Troyer factors.*   There was no preexisting relationship between the Trustee and CKDBW that would influence the Trustee's decision to settle, and settlement was reached only after extensive negotiations.

45.   As described above, the factors considered under *A&C Properties* and the consistent circumstances considered under *Troyer* weigh in favor of approving the Settlement Agreement and in determining that the Settlement Agreement was reached in good faith.

46.   The Settlement Agreement entered into between the Trustee and CKDBW was made in good-faith pursuant to Haw. Rev. Stat. § 663-15.5.

47.   The settlement of the estate's claims on the terms and conditions of the attached Settlement Agreement (Ex. A) is reasonable and prudent in light of the costs and risks of litigating those claims, and is within the range of the reasonable business judgment of the Trustee.

48.   As required under Bankruptcy Rule 9019(a), the Trustee has provided notice of this motion to creditors, Debtor, and any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002. The Trustee has also provided proper notice to the persons on Exhibit B attached hereto who may have advised Debtor with respect to its investment in the Diamond Resort or be otherwise

related to the claims settled and therefore might be considered joint tortfeasors under Section 663-15.5 of the Hawaii Revised Statutes.

49.    If any of the conclusions of law stated herein shall be deemed to be findings of fact, they are hereby incorporated by reference in the findings of fact section above.

DATED: Honolulu, Hawaii _____

695844 v. 2

## EXHIBIT A

## [INSERT SETTLEMENT AGREEMENT]

695844 v. 2

## EXHIBIT B

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| Bay West Kailua Bay, L.L.C. | Bay West Kailua Bay, L.L.C.<br>c/o Case Lombardi & Pettit,<br>  Its Attorneys<br>Dana R.C. Lyons, Esq.<br>Ryan M. Hamaguchi, Esq.<br>Ted N. Pettit, Esq.<br>737 Bishop Street, Suite 2600<br>Honolulu, Hawaii 96813-3283<br><br>Bay West Kailua Bay, L.L.C.<br>c/o Matthew Shannon, Esq.,<br>  Its Registered Agent<br>Bays Lung Rose & Holma<br>Ali'i Place, Suite 1600<br>1099 Alakea Street<br>Honolulu, HI 96813 |
| Granite Fund IV, LLC | Granite Fund IV, LLC<br>c/o Jonathan W.Y. Lai , Esq.,<br>  Its Attorney and Registered Agent<br>Watanabe Ing LLP<br>999 Bishop Street<br>23rd Floor<br>Honolulu, HI 96813 |
| Diamond Resort Hawaii Corporation | Diamond Resort Hawaii Corporation<br>c/o Carlsmith Ball,<br>  Its Attorneys<br>Steven M. Egesdal, Esq.<br>Tom E. Roesser, Esq.<br>Eric (Rick) James, Esq.<br>William M. Harstad, Esq.<br>ASB Tower, Suite 2200<br>1001 Bishop Street<br>Honolulu, Hawaii 96813<br><br>Diamond Resort Hawaii Corporation<br>c/o Kyoko Kimura,<br>  Its Registered Agent<br>555 Kaukahi Street<br>Wailea, HI 96753 |

## EXHIBIT B

1 of 7

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| Patrick L. Beach | Patrick L. Beach<br>c/o Harbour Realty Partners<br>25 E. Anapamu 3rd Floor<br>Santa Barbara, CA 93101 |
| Joseph Leoni | Joseph Leoni<br>6922 Niumalu Loop<br>Honolulu, HI 96825<br><br>Joseph Leoni<br>c/o George Van Buren, Esq.<br>745 Fort St. Mall, Ste. 1950<br>Honolulu, HI 96813 |
| Joseph Toy | Joseph Toy<br>246 Aikahi Loop<br>Kailua, HI 96734<br><br>Joseph Toy<br>c/o George Van Buren, Esq.<br>745 Fort St. Mall, Ste. 1950<br>Honolulu, HI 96813 |
| Leland B. Evans, Esq. | Leland B. Evans, Esq.<br>c/o Attorneys Benefits Corporation<br>Monterey Business Center<br>8 Harris Court, Suite A-1<br>Monterey, CA 93940 |
| Attorneys Benefits Corporation | Attorneys Benefits Corporation<br>c/o Leland B. Evans, Esq., Its Agent<br>Monterey Business Center<br>8 Harris Court, Suite A-1<br>Monterey, CA 93940 |
| Matthew Gambetta | Matthew K. Gambetta<br>c/o MG Realty Advisors, LLC<br>2014-A Ualakaa Street<br>Honolulu, HI 96822 |

## EXHIBIT B

2 of 7

695844 v. 2

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| | Matthew K. Gambetta<br>Oahu Real Estate Group LLC<br>2057 Alihilani Place<br>Honolulu, HI 96822 |
| Richard Hutchins, CPA | Richard Hutchins, CPA<br>c/o Novogradac & Company LLP<br>246 First Street, 2nd Floor<br>San Francisco, CA 94105<br><br>Richard Hutchins, CPA<br>Novogradac & Company LLP<br>P.O. Box 7833<br>San Francisco, CA 94120 |
| Novogradac & Company LLP | Novogradac & Company LLP<br>c/o Michael Novogradac, Managing Partner<br>246 First Street, 2nd Floor<br>San Francisco, CA 94105 |
| Richard K. Ingersoll, Esq. | Richard K. Ingersoll, Esq.<br>c/o Gelber, Gelber & Ingersoll<br>745 Fort St., Ste. 1400<br>Honolulu, HI 96813 |
| Gelber, Gelber & Ingersoll | Gelber, Gelber & Ingersoll<br>c/o Stephen M. Gelber, Esq., Its Agent<br>745 Fort St., Ste. 1400<br>Honolulu, HI 96813 |
| Eric C. Perkins, Esq. | Eric C. Perkins, Esq.<br>c/o Perkins Law PLLC<br>4870 Sadler Road, Suite 300<br>Glen Allen, Virginia 23060 |
| Perkins Law PLLC | Perkins Law PLLC<br>c/o Eric C. Perkins, Esq., Its Agent<br>5104 Blairmont Drive<br>Glen Allen, Virginia 23059 |

## EXHIBIT B

695844 v 2

Exhibit 2<br>Page 19 of 23

U.S. Bankruptcy Court - Hawaii #11-03124 Dkt # 117 Filed 11/15/12 Page 41 of 52

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| George F. Roberts, CPA | George F. Roberts, CPA<br>c/o George F. Roberts, CPA, LLC<br>Stangenwald Building<br>119 Merchant Street, Suite 610<br>Honolulu, HI 96813 |
| George F. Roberts, CPA, LLC | George F. Roberts, CPA, LLC<br>c/o George F. Roberts, CPA , Its Agent<br>Stangenwald Building<br>119 Merchant Street, Suite 610<br>Honolulu, HI 96813 |
| David Shibata, Esq. | David Shibata, Esq.<br>c/o Rush Moore LLP<br>737 Bishop Street<br>Pacific Guardian Center<br>Mauka Tower, Ste. 2400<br>Honolulu, Hawaii 96813 |
| Rush Moore LLP | Rush Moore LLP<br>c/o David Shibata, Esq., Its Agent<br>737 Bishop Street<br>Pacific Guardian Center<br>Mauka Tower, Ste. 2400<br>Honolulu, Hawaii 96813 |
| Timothy Young | Timothy Young<br>c/o Harbour Realty Partners<br>25 E. Anapamu 3rd Floor<br>Santa Barbara, CA 93101 |
| Jerry Lynch | Jerry Lynch<br>2895 Kalakaua Ave., Stuite 504<br>Honolulu, HI 96815 |
| Jonathan McManus | Jonathan McManus<br>2895 Kalakaua Avenue, Suite 504<br>Honolulu, HI 96815 |

## EXHIBIT B

4 of 7

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| Black Beach LLC | **Black Beach LLC**<br>c/o Timothy John Young, Its Agent<br>737 Bishop St. Suite 2350<br>Honolulu, HI 96813 |
| **Black Diamond Hospitality Investments LLC** | **Black Diamond Hospitality Investments LLC**<br>c/o Joseph Leoni, As Manager of Black Diamond Holdings, LLC, Its Manager<br>6922 Niumalu Loop<br>Honolulu, HI 96825<br><br>**Black Diamond Hospitality Investments LLC**<br>c/o Timothy Young, As Manager of Black Diamond Holdings, LLC, Its Manager<br>Harbour Realty Partners<br>25 E. Anapamu, 3rd Floor<br>Santa Barbara, CA 93101<br><br>**Black Diamond Hospitality Investments LLC**<br>c/o Jerry Lynch, as Manager of Sandalwood Associates, LLC, Its Manager<br>2895 Kalakaua Avenue, Suite 504<br>Honolulu, HI 96815<br><br>**Black Diamond Hospitality Investments LLC**<br>c/o Jonathan McManus, as Manager of Sandalwood Associates, LLC, Its Manager<br>2895 Kalakaua Avenue, Suite 504<br>Honolulu, HI 96815<br><br>**Black Diamond Hospitality Investments LLC**<br>c/o Jerry Lynch, Its Agent<br>2895 Kalakaua Avenue, Suite 504<br>Honolulu, HI 96815 |
| **Black Diamond Holdings, LLC** | **Black Diamond Holdings, LLC**<br>c/o Joseph Leoni, Its Manager<br>6922 Niumalu Loop<br>Honolulu, HI 96825 |

## EXHIBIT B

695844 v. 2

Exhibit 2
Page 21 of 23

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| | **Black Diamond Holdings, LLC**<br>c/o Timothy Young, Its Manager<br>25 E Anapamu, 3rd Floor<br>Santa Barbara, CA 93101<br><br>**Black Diamond Holdings, LLC**<br>c/o Timothy John Young, Its Agent<br>2895 Kalakaua Avenue, Suite 504<br>Honolulu, Hawaii 96815 |
| **Beach Holding Company, L.L.C.** | **Beach Holding Company, L.L.C.**<br>c/o Patrick L. Beach, Its Agent<br>509 E. Montecito Street, 2nd Floor<br>Santa Barbara, CA 93103 |
| **Beach Investments Limited Partnership** | **Beach Investments Limited Partnership**<br>c/o Patrick L. Beach, Its Agent<br>25 E Anapamu, 3rd Floor<br>Santa Barbara, CA 93101 |
| **Diamond Resort Hawaii Corporation** | **Diamond Resort Hawaii Corporation**<br>c/o Kyoko Kimura, Its Agent<br>555 Kaukahi Street<br>Wailea, Hawaii 96753 |
| **Diamond Resort Hawaii Owners Association, Inc.** | **Diamond Resort Hawaii Owners Association, Inc.**<br>c/o Kyoko Kimura, Its Agent<br>555 Kaukahi Street<br>Wailea, Hawaii 96753 |
| **Diamond Resort Management, Inc.** | **Diamond Resort Management, Inc.**<br>c/o Carlsmith Ball,<br>    Its Attorneys<br>Steven M. Egesdal, Esq.<br>Tom E. Roesser, Esq.<br>Eric (Rick) James, Esq.<br>William M. Harstad, Esq.<br>ASB Tower, Suite 2200<br>1001 Bishop Street<br>Honolulu, Hawaii 96813 |

**EXHIBIT B**

6 of 7

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
|  | **Diamond Resort Management, Inc.** <br> c/o Kyoko Kimura, Its Agent <br> 555 Kaukahi Street <br> Wailea, Hawaii 96753 |
| **Janic Corporation** | **Janic Corporation** <br> c/o Carlsmith Ball, <br>    Its Attorneys <br> Steven M. Egesdal, Esq. <br> Tom E. Roesser, Esq. <br> Eric (Rick) James, Esq. <br> William M. Harstad, Esq. <br> ASB Tower, Suite 2200 <br> 1001 Bishop Street <br> Honolulu, Hawaii 96813 <br><br> **Janic Corporation** <br> c/o Kyoko Kimura, Its Agent <br> 555 Kaukahi Street <br> Wailea, Hawaii 96753 |
| **Sandalwood Associates, LLC** | **Sandalwood Associates, LLC** <br> c/o Jerry Lynch, Its Manager <br> 2895 Kalakaua Avenue, Suite 504 <br> Honolulu, HI 96815 <br><br> **Sandalwood Associates, LLC** <br> c/o Jonathan McManus, Its Manager <br> 2895 Kalakaua Avenue, Suite 504 <br> Honolulu, HI 96815 <br><br> **Sandalwood Associates, LLC** <br> c/o Jonathan Lai, Esq., Its Agent <br> Watanabe Ing LLP <br> First Hawaiian Center <br> 999 Bishop Street, 23rd Floor <br> Honolulu, HI 96813 <br><br> **Sandalwood Associates, LLC** <br> c/o Richard Turbin, Esq. <br> 737 Bishop St., Ste. 2730, Mauka Tower <br> Honolulu, HI 96813 |

**EXHIBIT B**

695844 v. 2

**Exhibit 2** <br> **Page 23 of 23**

## EXHIBIT B

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| **Bay West Kailua Bay, L.L.C.** | **Bay West Kailua Bay, L.L.C.**<br>c/o Case Lombardi & Pettit,<br>  Its Attorneys<br>Dana R.C. Lyons, Esq.<br>Ryan M. Hamaguchi, Esq.<br>Ted N. Pettit, Esq.<br>737 Bishop Street, Suite 2600<br>Honolulu, Hawaii 96813-3283<br><br>**Bay West Kailua Bay, L.L.C.**<br>c/o Matthew Shannon, Esq.,<br>  Its Registered Agent<br>Bays Lung Rose & Holma<br>Ali'i Place, Suite 1600<br>1099 Alakea Street<br>Honolulu, HI 96813 |
| **Granite Fund IV, LLC** | **Granite Fund IV, LLC**<br>c/o Jonathan W.Y. Lai , Esq.,<br>  Its Attorney and Registered Agent<br>Watanabe Ing LLP<br>999 Bishop Street<br>23rd Floor<br>Honolulu, HI 96813 |
| **Diamond Resort Hawaii Corporation** | **Diamond Resort Hawaii Corporation**<br>c/o Carlsmith Ball,<br>  Its Attorneys<br>Steven M. Egesdal, Esq.<br>Tom E. Roesser, Esq.<br>Eric (Rick) James, Esq.<br>William M. Harstad, Esq.<br>ASB Tower, Suite 2200<br>1001 Bishop Street<br>Honolulu, Hawaii 96813<br><br>**Diamond Resort Hawaii Corporation**<br>c/o Kyoko Kimura,<br>  Its Registered Agent<br>555 Kaukahi Street<br>Wailea, HI 96753 |

## EXHIBIT B

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| Patrick L. Beach | Patrick L. Beach<br>c/o Harbour Realty Partners<br>25 E. Anapamu 3rd Floor<br>Santa Barbara, CA 93101 |
| Joseph Leoni | Joseph Leoni<br>6922 Niumalu Loop<br>Honolulu, HI 96825<br><br>Joseph Leoni<br>c/o George Van Buren, Esq.<br>745 Fort St. Mall, Ste. 1950<br>Honolulu, HI 96813 |
| Joseph Toy | Joseph Toy<br>246 Aikahi Loop<br>Kailua, HI 96734<br><br>Joseph Toy<br>c/o George Van Buren, Esq.<br>745 Fort St. Mall, Ste. 1950<br>Honolulu, HI 96813 |
| Leland B. Evans, Esq. | Leland B. Evans, Esq.<br>c/o Attorneys Benefits Corporation<br>Monterey Business Center<br>8 Harris Court, Suite A-1<br>Monterey, CA 93940 |
| Attorneys Benefits Corporation | Attorneys Benefits Corporation<br>c/o Leland B. Evans, Esq., Its Agent<br>Monterey Business Center<br>8 Harris Court, Suite A-1<br>Monterey, CA 93940 |

**EXHIBIT B**

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| Matthew Gambetta | **Matthew K. Gambetta**<br>c/o MG Realty Advisors, LLC<br>2014-A Ualakaa Street<br>Honolulu, HI 96822<br><br><br>**Matthew K. Gambetta**<br>Oahu Real Estate Group LLC<br>2057 Alihilani Place<br>Honolulu, HI 96822 |
| Richard Hutchins, CPA | **Richard Hutchins, CPA**<br>c/o Novogradac & Company LLP<br>246 First Street, 2nd Floor<br>San Francisco, CA 94105<br><br>**Richard Hutchins, CPA**<br>Novogradac & Company LLP<br>P.O. Box 7833<br>San Francisco, CA 94120 |
| Novogradac & Company LLP | **Novogradac & Company LLP**<br>c/o Michael Novogradac, Managing Partner<br>246 First Street, 2nd Floor<br>San Francisco, CA 94105 |
| Richard K. Ingersoll, Esq. | **Richard K. Ingersoll, Esq.**<br>c/o Gelber, Gelber & Ingersoll<br>745 Fort St., Ste. 1400<br>Honolulu, HI 96813 |
| Gelber, Gelber & Ingersoll | **Gelber, Gelber & Ingersoll**<br>c/o Stephen M. Gelber, Esq., Its Agent<br>745 Fort St., Ste. 1400<br>Honolulu, HI 96813 |
| Eric C. Perkins, Esq. | **Eric C. Perkins, Esq.**<br>c/o Perkins Law PLLC<br>4870 Sadler Road, Suite 300<br>Glen Allen, Virginia 23060 |

## EXHIBIT B

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| Perkins Law PLLC | Perkins Law PLLC<br>c/o Eric C. Perkins, Esq., Its Agent<br>5104 Blairmont Drive<br>Glen Allen, Virginia 23059 |
| George F. Roberts, CPA | George F. Roberts, CPA<br>c/o George F. Roberts, CPA, LLC<br>Stangenwald Building<br>119 Merchant Street, Suite 610<br>Honolulu, HI 96813 |
| George F. Roberts, CPA, LLC | George F. Roberts, CPA, LLC<br>c/o George F. Roberts, CPA , Its Agent<br>Stangenwald Building<br>119 Merchant Street, Suite 610<br>Honolulu, HI 96813 |
| David Shibata, Esq. | David Shibata, Esq.<br>c/o Rush Moore LLP<br>737 Bishop Street<br>Pacific Guardian Center<br>Mauka Tower, Ste. 2400<br>Honolulu, Hawaii 96813 |
| Rush Moore LLP | Rush Moore LLP<br>c/o David Shibata, Esq., Its Agent<br>737 Bishop Street<br>Pacific Guardian Center<br>Mauka Tower, Ste. 2400<br>Honolulu, Hawaii 96813 |
| Timothy Young | Timothy Young<br>c/o Harbour Realty Partners<br>25 E. Anapamu 3rd Floor<br>Santa Barbara, CA 93101 |
| Jerry Lynch | Jerry Lynch<br>2895 Kalakaua Ave., Suite 504<br>Honolulu, HI 96815 |

**EXHIBIT B**

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| Jonathan McManus | Jonathan McManus<br>2895 Kalakaua Avenue, Suite 504<br>Honolulu, HI 96815 |
| Black Beach LLC | Black Beach LLC<br>c/o Timothy John Young, Its Agent<br>737 Bishop St. Suite 2350<br>Honolulu, HI 96813 |
| Black Diamond Hospitality Investments LLC | Black Diamond Hospitality Investments LLC<br>c/o Joseph Leoni, As Manager of Black Diamond Holdings, LLC, Its Manager<br>6922 Niumalu Loop<br>Honolulu, HI 96825<br><br>Black Diamond Hospitality Investments LLC<br>c/o Timothy Young, As Manager of Black Diamond Holdings, LLC, Its Manager<br>Harbour Realty Partners<br>25 E. Anapamu, 3rd Floor<br>Santa Barbara, CA 93101<br><br>Black Diamond Hospitality Investments LLC<br>c/o Jerry Lynch, as Manager of Sandalwood Associates, LLC, Its Manager<br>2895 Kalakaua Avenue, Suite 504<br>Honolulu, HI 96815<br><br>Black Diamond Hospitality Investments LLC<br>c/o Jonathan McManus, as Manager of Sandalwood Associates, LLC, Its Manager<br>2895 Kalakaua Avenue, Suite 504<br>Honolulu, HI 96815<br><br>Black Diamond Hospitality Investments LLC<br>c/o Jerry Lynch, Its Agent<br>2895 Kalakaua Avenue, Suite 504<br>Honolulu, HI 96815 |

**EXHIBIT B**

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| Black Diamond Holdings, LLC | **Black Diamond Holdings, LLC**<br>c/o Joseph Leoni, Its Manager<br>6922 Niumalu Loop<br>Honolulu, HI 96825<br><br>**Black Diamond Holdings, LLC**<br>c/o Timothy Young, Its Manager<br>25 E Anapamu, 3rd Floor<br>Santa Barbara, CA 93101<br><br>**Black Diamond Holdings, LLC**<br>c/o Timothy John Young, Its Agent<br>2895 Kalakaua Avenue, Suite 504<br>Honolulu, Hawaii 96815 |
| Beach Holding Company, L.L.C. | **Beach Holding Company, L.L.C.**<br>c/o Patrick L. Beach, Its Agent<br>509 E. Montecito Street, 2nd Floor<br>Santa Barbara, CA 93103 |
| Beach Investments Limited Partnership | **Beach Investments Limited Partnership**<br>c/o Patrick L. Beach, Its Agent<br>25 E Anapamu, 3rd Floor<br>Santa Barbara, CA 93101 |
| Diamond Resort Hawaii Corporation | **Diamond Resort Hawaii Corporation**<br>c/o Kyoko Kimura, Its Agent<br>555 Kaukahi Street<br>Wailea, Hawaii 96753 |
| Diamond Resort Hawaii Owners Association, Inc. | **Diamond Resort Hawaii Owners Association, Inc.**<br>c/o Kyoko Kimura, Its Agent<br>555 Kaukahi Street<br>Wailea, Hawaii 96753 |
| Diamond Resort Management, Inc. | **Diamond Resort Management, Inc.**<br>c/o Carlsmith Ball,<br>Its Attorneys<br>Steven M. Egesdal, Esq.<br>Tom E. Roesser, Esq.<br>Eric (Rick) James, Esq.<br>William M. Harstad, Esq.<br>ASB Tower, Suite 2200<br>1001 Bishop Street |

**EXHIBIT B**

6 of 7

| NAME OF PARTY NOTICED | NOTICE(S) SENT TO |
|---|---|
| | Honolulu, Hawaii 96813 |
| | **Diamond Resort Management, Inc.**<br>c/o Kyoko Kimura, Its Agent<br>555 Kaukahi Street<br>Wailea, Hawaii 96753 |
| **Janic Corporation** | **Janic Corporation**<br>c/o Carlsmith Ball,<br>    Its Attorneys<br>Steven M. Egesdal, Esq.<br>Tom E. Roesser, Esq.<br>Eric (Rick) James, Esq.<br>William M. Harstad, Esq.<br>ASB Tower, Suite 2200<br>1001 Bishop Street<br>Honolulu, Hawaii 96813<br><br>**Janic Corporation**<br>c/o Kyoko Kimura, Its Agent<br>555 Kaukahi Street<br>Wailea, Hawaii 96753 |
| **Sandalwood Associates, LLC** | **Sandalwood Associates, LLC**<br>c/o Jerry Lynch, Its Manager<br>2895 Kalakaua Avenue, Suite 504<br>Honolulu, HI 96815<br><br>**Sandalwood Associates, LLC**<br>c/o Jonathan McManus, Its Manager<br>2895 Kalakaua Avenue, Suite 504<br>Honolulu, HI 96815<br><br>**Sandalwood Associates, LLC**<br>c/o  Jonathan Lai, Esq., Its Agent<br>Watanabe Ing LLP<br>First Hawaiian Center<br>999 Bishop Street, 23rd Floor<br>Honolulu, HI 96813<br><br>**Sandalwood Associates, LLC**<br>c/o  Richard Turbin, Esq.<br>737 Bishop St., Ste. 2730, Mauka Tower<br>Honolulu, HI 96813 |

**EXHIBIT B**

U.S. Bankruptcy Court - Hawaii  #11-03124  Dkt # 117  Filed  11/15/12  Page 52 of 52